LILLIAN SALOSHIN, *Adm'x, v.* ZOEL A. HOULE.

*William H. Sleeper* and *John W. Perkins* (*Mr. Perkins* orally), for the plaintiff and the insurer.

*Sewall & Waldron* (*Mr. Sewall* orally), for the defendant.

ALLEN, J.   It is sought by the transfer of the case to have it here determined what effect the plaintiff's acceptance of compensation in New York had upon the action.   The answer depends, first, upon the policy of comity in enforcing the laws of other states, and second, if comity may be invoked, upon the New York law relating to and regulating compensation.

As the record is understood, the plaintiff as the decedent's widow, is the sole beneficiary of the action under P. L., *c.* 302, *s.* 14, II.   It does not appear that there are minor or dependent children to share with her in any recovery.   However the New York law is to be construed, comity in its recognition and enforcement would not go so far as to permit it to defeat local law.   Conduct of the plaintiff which sought to divest beneficiaries of their interest without their consent and inured solely to her benefit would be regarded as illegal here.   A legal character of the conduct in the state of the domicile will be given no effect here when to do so tends to alter the local law.   Local jurisdiction over the action gives jurisdiction over its proceeds, and hence over their disposal.

Nor may the New York law give the insurer any right of action, independent of that of the plaintiff, which may be enforced here.   That law may not displace or modify the local law in its effect upon local occurrences and transactions.   As to them, the local law will recognize no liability except that which it itself imposes.   Otherwise local sovereignty would be impaired.   It follows that if the New York

law might be construed as giving the insurer a right of action of its own distinct from that of the plaintiff, it could not be maintained here. And it also follows that the amount of recovery in the local action cannot be affected by foreign law. The rule of damages is no less immune to change than that of liability.

But since the plaintiff was personally subject to the laws of New York, her conduct pursuant thereto is to be recognized here so far as local laws and policy are not disregarded. Her acceptance of compensation may not prejudice the defendant's rights or weaken his position. He was not a party to it and is under no burden on account of it. He was subject to suit here only in the action brought. But if the acceptance of compensation inured to his advantage, he may avail himself of it. The cause of action being the plaintiff's property both at law in her representative capacity and in equity as its beneficiary, she might so act as to lose her title by abandonment. If it was in some way lost or destroyed, the defendant may plead its extinguishment. Termination of all right to carry on the action would discharge his liability. If by what was done in New York the plaintiff lost her right to continue the maintenance of the action and the insurer did not acquire the right to maintain it for its benefit or lost the right by failure seasonably to proceed with its maintenance, the complete loss of the cause would entitle the defendant to judgment. Local law would not bar comity in respect thereto.

On the other hand, if the award of compensation in New York had the effect under the law there, not to extinguish the right of action through the loss of property rights therein, but to permit its maintenance either by the plaintiff or by the insurer as its assignee, the rule of comity is equally available to adopt the legal character of the transaction which it has where it is entered into or takes place. A cause of action for personal injuries if not terminable by death and if in form *ex contractu*, is generally assignable under local law. *Stewart v. Lee*, 70 N. H. 181, 185. The policy and reason for the rule are broad enough to make the form of action immaterial. In that case a judgment in an action for breach of promise of marriage was held assignable, and an action of negligence for personal injuries can be no less so. Nor is it of consequence that while here an assignee of a claim must sue in the assignor's name for the former's use and benefit, (*Thompson v. Emery*, 27 N. H. 269, 273; *Stewart v. Lee, supra; Stavrelis v. Zacharias*, 79 N. H. 146, 148), in New York the assignee may sue in his own name. The distinction is one of procedure alone, as to which the *lex fori* governs. 5 C. J. 986.

Under the rule applied by a divided court in *Hansen* v. *Railway*, 78 N. H. 518, and since followed in other cases (*Connecticut &c. Co.* v. *Railroad*, 78 N. H. 553, 557; *Stinson* v. *Railroad*, 81 N. H. 473, 476; *Marshall* v. *Railroad*, 81 N. H. 548; *Baribault* v. *Robertson*, 82 N. H. 297, 298; *Lee* v. *Chamberlin*, 84 N. H. 182), "foreign law is a matter of fact, determinable at the trial term." "Exceptions to the finding can raise only questions of the admissibility or sufficiency of the evidence." *Hansen* v. *Railway*, *supra*, 524. While the relevant New York law, or a part of it, is here transferred, it is transferred only as evidence. What the rule of law in New York is in respect to the relative rights of a plaintiff and insurer, after compensation is there awarded, in an action for death brought and pending in another state, is the issue. It is an issue of fact, and it has not been passed upon. Under the practice heretofore prevailing and in accordance with the cases cited it was the trial court's duty to find the law as a fact. Its meaning and declaration as well as its wording and phraseology are to be included in the finding. Here evidence is reported, the inferences from which are left to this court to draw. As to such procedure, "The case is incomplete . . . the facts are not found. Certain evidence is transferred . . . This court has no jurisdiction to find the facts in cases transferred from the superior court. *Coles* v. *Railroad*, 74 N. H. 425. It follows that the transfer of the evidence cannot affect the decision here." *Nashua Trust Co.* v. *Burke*, 84 N. H. 490.

In conformity with the practice the case would be returned to the trial court for its findings of the facts necessary to a decision of the questions transferred. But as grave and serious doubts of the propriety of the treatment of foreign law as an ordinary question of fact have presented themselves, the rule has been reëxamined and consideration given its standing. Its logical support and its practical merits are so open to objection and inviting to criticism that the rule of *stare decisis* is not strong enough to close the door to the consideration. The question is in a large aspect procedural. To hold the rule erroneous has no perceived effect on settled situations or property rights, and no injurious results are in view which render it inexpedient and improper to question the validity of the rule.

The *Hansen* case is in accord with the weight of authority. The authorities are largely collected in a note in 68 A. L. R. 809-820. But its reasoning appears to unduly stress the importance of the distinction between "proof" of a foreign law and ascertainment of a domestic law, to disregard in some measure the difference between the evidence and facts of foreign law, and to result in an irrational allotment of

judicial authority. "The distinctive treatment of the fact of an unwritten foreign law as compared to the fact of a domestic one seems unwarranted in reason and confusing in practice." Chamberlayne, Ev., s. 155. And the proposition has equal force when the foreign and domestic laws are statutes.

In keeping separate the methods for ascertaining foreign and domestic law the difference is more nominal than real. And in its practical aspect the problem is one of judicial expediency. The established order that this court shall pass upon issues of law but shall not ordinarily decide questions of fact is not determinative. Conceding that foreign law is a matter of fact, yet it also is law in every true sense. It stands the test of the definition of law as "a rule or standard which it is the duty of a judicial tribunal to apply and enforce." When a case is to be tried and its merits determined by foreign law because foreign rather than local law is applicable to it, it is here no less the duty of the judge to say what the law is than when local law is administered. For the purposes of the case the foreign law becomes the local law. It is the rule or standard locally applied because of the special circumstances of the case. If "casually adopted," it nevertheless controls. The ruling in the case that the imported foreign law displaces the local law ordinarily prevailing does not complete the performance of judicial duty. The law to be applied and enforced, whether local or foreign, is to be announced and declared by the judge. All that is meant in saying that foreign law is matter of fact is that it must be proved as facts are proved, by the law of evidence.

"Now, two things seem to be true: (a) that in an exact sense . . . these questions [about foreign laws] are questions of fact, and that equally the same questions about domestic laws are questions of fact; (b) that if the *factum* of domestic law is for the court, equally the *factum* of foreign law should be,—assuming it to be true that it is wanted, in order to determine the rule or law of the case. Such law, as well as the domestic law, should be determined by the judge. The circumstance that while the domestic law does not need to be proved by 'evidence', strictly so called, foreign law must be so proved, is not material. In reason the judges might well enough be allowed to inform themselves about foreign law in any manner they choose . . . But since it is required to be proved, it should be proved to the judge." Professor Thayer, "Law and Fact" in Jury Trials, IV Harv. Law Rev. 172.

Once determined, or "proved," the foreign law becomes a rule governing the decision of a case to which it is applicable as fully and conclusively as a local law in a case subject thereto. The jurisdiction of

this court to determine the law in any case should be denied only for special reasons of such strength and force as to justify the exception. If this court is without authority to say what the foreign law is in a case subject to it, the reason is that it has no authorized means to ascertain it. But since general authority to act imports authority to employ necessary measures of action, limitation of authority by denial of such measures should be clear and positive. To defeat a general purpose by deprivation of means of attainment is to make minor considerations of greater consequence than major ones, when no vital principle is at stake so as to make it necessary.

This court "shall do and perform all the duties reasonably requisite and necessary to be done by a court of final jurisdiction of questions of law . . ." P. L., c. 315, s. 2. "Questions of fact pending before the court may be heard and determined by one or more justices . . ." P. L., c. 315, s. 6. If a foreign law may not be ascertained as a fact under the latter section, it may at least be said that under the former the legislature has manifested no purpose to restrict the court's authority to deal with problems fairly and in general understanding to be called "questions of law" in such manner as may be appropriate. The statute leaves it to this court to determine what are questions of law and how they are properly to be dealt with. It was given no different construction in the *Hansen* case, and hence to overrule the case is not to change the construction of the statute. Special authority to determine and set the bounds and limits of the general jurisdiction given was not denied in the *Hansen* case, and the present inquiry is only whether the bounds and limits thereby established were proper.

If it is the duty of this court to say what the law is, its duty to find out what it is, so that it may announce and declare it, would not seem debatable. The *Hansen* case holds that because this is not a trial court and because, excepting certain situations, foreign law must be determined by a trial of its issue, this court has no authority to determine the issue and has the duty not to say what the law is in such cases. The excepted situations are of cases where "the evidence is a single statute or a decision of a court, the language of which is not in dispute." Where there are "numerous decisions which may be more or less conflicting, or which bear upon the subject only collaterally, or by way of analogy, and where inferences must be drawn from them," the trial court's finding is final if within the limits of reasonable deduction. It is believed to need no argument to demonstrate such a state of the law to be unsatisfactory and inexpedient. It results in a division of final authority according to the comparative ease or

difficulty in ascertaining the foreign law, imposing on the trial court the duty of ascertaining it when it is difficult, and leaving this court with no authority to pass upon the merits of the ascertainment except in the limited way a verdict may be passed upon. And the result is to give the foreign law the character of an ordinary fact when, as already shown, its character of service is the same as that of domestic law. If its ascertainment as a fact may not be questioned, then its announcement and declaration as a law must be accepted.

There is no sound legal theory that a judge knows the local law. If knowledge in all cases were assumed, briefs and arguments would be anomalous and inconsistent. When he does not know or have the law in mind, it is his duty to find out what it is in cases calling for its application. He may take judicial notice of it, not because of a supposed knowledge, but because it is contrary to judicial policy that local law should be ascertained in the manner facts are proved under the law of evidence. He either knows it or has "the most competent knowledge where to search for it." Wigmore, Ev., (1st *ed.*), s. 2572. When the local law is the common law, the search may extend to the decisions of courts of other jurisdictions where that law is in force. Their number is well above fifty. Textbooks and treatises may also be consulted. Statutes may be examined to determine how far they affect the unwritten law in such outside jurisdictions. Foreign law is "proved" in the same manner, with the additional feature that experts may testify about it. If this court may not receive their testimony, the "facts" to which they testify may be found and transferred by the trial court, and the facts thus found may be regarded as a substantial equivalent of their testimony.

In the *Hansen* case foreign law is treated as though it were an issue of law in certain situations, upon the principle of construction. It is for the court to construe writings, and their interpretation, although actually an issue of fact, is dealt with as one of law. But the inclusion of some situations and the exclusion of others from the application of the principle seems scholastic, and even illogical. It is said that when the evidence of the foreign law is so clear that it shows conclusively what the fact of it is, the law may be here declared. And further, it is said that when the evidence is not thus conclusive, only the trial court may pass upon it. In this distinction lies a seeming confusion between evidence and facts. The authenticity of the sources of the law is wholly an evidentiary matter, but when certain statutes and decisions are found to contain the law, it would seem that construction might be given them, whether they are few or

numerous, clear or doubtful in meaning, and in harmony or in conflict. The fact of the law has been proved; what it means is a judicial issue.

In construction a number of writings may form a collective whole relating to the issue and the meaning of which is to be declared. They may contain inconsistencies and lack coherence. But when they have been proved as the writings, the trial court's finding of their meaning does not serve in any way here to show it. Why may not the "numerous decisions" by the courts of a foreign jurisdiction bearing on one of its laws be construed to show what law finally is declared by them? If they are more or less conflicting and in some instances of doubtful bearing, it is no reason why construction should abandon its employment. If the cases are numerous, they are no less writings, and are to be treated as such in the same way a statute is. If in conflict, they are no less in their entirety declaratory of the law, provided there is any balance of probability furnished by them in showing what the law is.

In all states federal law is ascertained by the same process and on the same theory as domestic law. The judge searches for it and finds it out. No one has thought of questioning the method of its ascertainment in any of the numerous cases in this court in which it has been enforced. This treatment is said to be because the federal laws "are equally the laws of *each State.*" Wigmore, Ev., (1st *ed.*), s. 2575. The reason seems somewhat specious and open to the charge of opportunism. Between ascertaining federal law and foreign law there is no real difference of method by the trial court. If experts may not there testify about federal law having local application, yet as to other federal law, and as already suggested as to foreign law when it is imported, applied and enforced, it becomes the local law for the purposes of the case. It is made the *lex fori* within a limited field of operation.

There remains to be answered the point that if foreign law is a matter of fact, although subject to construction, yet the competent evidence consisting of the statutes, court decisions and other writings bearing on it as well as the testimony of experts, should be heard and received by the trial court and then passed to this court by transfer for its determination of the law. The facts or writings thus found would be here construed, but it would be uncertain if they were all that related to the issue. In a case controlled by foreign law it is as important that all the evidentiary facts bearing on it should be presented as that in a case governed by local law the search should be

exhaustive. In either case the independent investigation of the judge should be added to the aid of counsel.

By the doctrine of judicial notice this treatment may be given. In the process of construction the judge may investigate and use the knowledge thus acquired. "There are, however, facts of 'law' which are for the *judge's own ultimate determination,*— such as the tenor of foreign or local law . . . and the meaning of a document . . . Since these are to be decided by the judge, he is at liberty to *investigate the facts* for himself, in addition to receiving the evidence which the parties may offer . . . These investigations are frequently to be observed in rulings upon . . . the tenor of foreign law, and the meaning of words." Wigmore, Ev., (1st *ed.*), s. 2569 (*b*). The principle was recognized in *Attorney-General* v. *Dublin*, 38 N. H. 459, 515, 516: the ". . . meaning of the terms used in this will, . . . must be determined by the court as matter of law . . . and . . . we may resort to history, and works and treatises of acknowledged authority, which have been brought to our notice in the arguments of counsel, and by the testimony of witnesses, or which we have met with in the course of our own inquiries."

This does not mean that the doors are opened wide to permit the judge to ascertain independently all pertinent facts bearing on construction. But so far as they may be ascertained by study of works of acknowledged authority upon the subject, the examination and use of such works is proper. Knowledge gained by personal observation and that acquired by study, reflection and academic and experimental research are to be kept separate in principle, even if the line of separation is not always easy to draw in practice. Wigmore, Ev., (1st *ed.*), s. 2569 (*a*). Since this court may freely and fully act in passing upon the facts in cases of construction, the incidental use of knowledge gained by its research is proper.

Carrying the point to its conclusion, if no evidence at all of the foreign law is furnished, it may be that there are no facts to be deduced. Without a finding of the facts, they cannot be construed, and without a case of construction there is no occasion to employ judicial notice as an aid. Such a situation is too infrequent to be of practical concern. If no evidence of the law of a foreign or sister state is presented to the trial court, a presumption in favor of the common law will govern if that law is there in force. Beyond that a case may well fail for lack of proof.

The general problem contains two factors. Both relate to the assignment of issues for decision. One concerns the division of issues

between judge and jury. The other pertains to the authority of the appellate court in respect to issues passed upon by the trial court. Neither factor may be determined by applying the classification between questions of fact and questions of law as a formula. Laws are facts as much as other matters, as pointed out in the citation from Professor Thayer. The statement of exactness would be between facts of law and other facts. But even thus considered, the classification does not in all cases show clearly the way to correct results.

Not all issues of fact are submitted to the jury, nor are only issues of law transferable to this court.

In a jury trial many issues of fact are passed upon by the judge, if incidental to the main issue. Repeatedly he is called upon to exercise "discretion" and to say "what justice requires," a phrase covering a multitude of orders based upon a process combining a finding of fact and a ruling in pursuance of the finding. While his rulings are subject to exception, his exercise of discretion is not. It follows that while jury issues are confined to those of fact, using the term in its usual sense, the inquiry whether an issue of fact is for the jury is to be answered by reference to rules of law which the classification as a formula is not helpful to show.

With reference to appellate questions, an issue is not to be denied consideration in this court merely because it is not one of law. It may well be that all issues here decided are to be regarded and classified as of law, but in essential character some are only of fact and are given treatment as such.

As already pointed out, in construction the issue is of a fact relating to something other than a law. What the writing means, is the inquiry. The question in a case whether the evidence supports the verdict, is another instance of an issue of fact. There is a rule of law that reasonable inferences may be, while conjectural ones may not be, drawn from the evidence, but the application of the rule is in reality and at bottom a process of ascertaining an ordinary fact. In saying what reason permits, only reason is employed. Cases of this sort do not present issues of law, although it is usually said they do because it is the law that the issues shall be here dealt with. And here again the division between actual legal and other issues fails as a formula.

The real inquiry is what the law is as to the assignment of an issue for decision. When the law is ascertained, it is well enough to classify and describe it according to a convenient category. When the category is used as a formula, it may usually coincide with the law. But this is because the category correctly classifies the law, and not be-

cause in final analysis it is the law itself or tests the law. The law makes the category, and the use of the category as though it were the law has produced what are believed to be erroneous conceptions. When it is seen that juries do not pass upon all issues of ordinary fact, that trial judges decide many such issues, and that this court determines such issues in certain cases, it is apparent that the classification between legal and other issues has no value of invariable guidance. To retain it as a convenient form of expression and statement, with the reservation that certain issues of fact are to be treated like issues of law, may be worth while, as already suggested. But it should be regarded as a result and outcome of the law, and not as a cause and reason for it.

The inquiry how a foreign law in issue is to be ascertained, is to be determined by the best, most reliable and most certain methods within available judicial procedure. This is the underlying principle of the law of evidence in the ascertainment of the so called issues of fact, and it should be no less the principle to use in the ascertainment of rules of law. Classification as the outcome of applying principles should not be employed to determine it. In such employment is believed to lie much of the trouble and difficulty that the issue of foreign law has caused. Justice may well require that it be given factual aspects. It may thus be most reliably and certainly ascertained. But such treatment should be given in the light of the purpose of such an ascertainment.

The views herein expressed are deemed to state the better rule on the point; and so far as the *Hansen* case and other cases are not in accord with them, they are overruled. No radical departure from general authority results. As has always been the case here, and in most jurisdictions, the issue of foreign law is one addressed to the court, and not to the jury. The issue now remains one of fact. Its treatment as one of law, so far as may be enabled under the doctrine of construction, is generally given. The most that is now done is to broaden the application of that doctrine and to invoke the principle of judicial notice in respect to it. To construe foreign law is an unquestioned exercise of the judicial function. How it may be done is a subsidiary and minor matter. The extension of the limited methods generally prevailing is substantially all that is made in advance of general authority. The proper functions of this court, the natural and suitable method of treatment of issues of this character, and uniformity and consistency in the law demand the extension so strongly as to outweigh opposing argument. The policy of the law is against

casual distinctions, and as itself a principle it should prevail over rules when their application tends to make the law uncertain and variable. And the result is to strengthen the probability that the foreign law is correctly proved.

The New York statute set forth in the record here has no doubtful meaning. By its terms the award of compensation shall "operate as an assignment of the cause of action." If language can be clearer to describe the effect of an award, that used does not appear capable of any meaning other than its natural import. The fact that in New York the assignee may bring or maintain the action in his own name does not tend to show that a new and different cause of action is contemplated. As already appears, this is but a matter of local procedure.

The law is entitled as relating to subrogation. It is here unimportant whether the insurer has the entire benefit of the action or only enough to reimburse it. But the term is used in the broad sense of substitution. "That in this sense the title speaks is shown by the substance of the section which refers not to subrogation but to an assignment of the cause of action." *Travelers Ins. Co.* v. *Company*, 239 N. Y. 273. "It transfers to and vests in the assignee the cause of action." *Travelers Ins. Co.* v. *Company*, 224 N. Y. 397.

How far this statute has any bearing on causes of action not arising, or the subject of suit, in New York, is a question not considered. If it is not applicable to them, it does not help the defendant. The cause of action remains unaffected. The plaintiff does not dispute the insurer's position as assignee. If the New York law applies, there is an assignment, and equally there is one if it does not.

The action may be further maintained in the plaintiff's name for the insurer's use and benefit.

*Case discharged.*

All concurred.