NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by email at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

U.S. District Court
No. 2022-0132

KEVIN BROWN & a.

v.

SAINT-GOBAIN PERFORMANCE PLASTICS CORPORATION & a.

Argued: November 15, 2022
Opinion Issued: March 21, 2023


The Hannon Law Firm, LLC, of Denver, Colorado (Kevin S. Hannon on the brief and orally), Gottesman & Hollis, P.A., of Nashua (Paul M. DeCarolis on the brief), and Morgan & Morgan Complex Litigation Group, of Tampa, Florida and Denver, Colorado (John Yanchunis and Kenneth J. Rumelt on the brief), for the plaintiffs.

McLane Middleton, P.A., of Manchester (Bruce W. Felmly and Jeremy T. Walker on the brief, and Bruce W. Felmly orally), and Dechert LLP, of New York, New York (Sheila L. Birnbaum, Mark S. Cheffo, Bert L. Wolff, Rachel B. Passaretti-Wu, and Lincoln Davis Wilson on the brief), for the defendants.

Conservation Law Foundation, Inc., of Concord (Heidi H. Trimarco on the brief), BCM Environmental & Land Law, PLLC, of Concord (Amy Manzelli on the brief), and Twomey Law Office, of Epsom (Paul Twomey on the brief), for Testing for Pease, New Hampshire Safe Water Alliance, and New Hampshire Science and Public Health, as amici curiae.

Welts, White & Fontaine, P.C., of Nashua (Israel F. Piedra on the brief), for New Hampshire Association for Justice, as amicus curiae.

Hermes, Netburn, O'Connor & Spearing, P.C., of Boston, Massachusetts (Holly M. Polglase on the brief), for Product Liability Advisory Council, Inc., as amicus curiae.

Plunkett Cooney, of Bloomfield Hills, Michigan (Mary Massaron on the brief), and Primmer Piper Eggleston & Cramer, PC, of Manchester (Doreen F. Connor on the brief), for DRI, Tri-State Defense Lawyers, and the Washington Legal Foundation, as amici curiae.

Shook Hardy & Bacon L.L.P., of Washington, D.C. and Boston, Massachusetts (Mark A. Behrens, Christopher E. Appel, and Brandon L. Arber on the brief), for Business and Industry Association, New Hampshire Association of Domestic Insurance Companies, Chamber of Commerce of the United States of America, National Association of Manufacturers, Coalition for Litigation Justice, Inc., American Property Casualty Insurance Association, American Tort Reform Association, American Chemistry Council, and Pharmaceutical Research and Manufacturers of America, as amici curiae.

Primmer Piper Eggleston & Cramer, PC, of Manchester (Matthew J. Delude on the brief), for New England Legal Foundation, as amicus curiae.

MACDONALD, C.J. Pursuant to Supreme Court Rule 34, the United States District Court for the District of New Hampshire (Laplante, J.) certified two questions for our consideration. The first question asks whether New Hampshire recognizes "a claim for the costs of medical monitoring as a remedy or as a cause of action" in the context of plaintiffs who were exposed to a toxic substance. Depending on the answer to the first question, the second question asks, "what are the requirements and elements of a remedy or cause of action for medical monitoring" under New Hampshire law. Because we answer the first question in the negative, we need not address the second question.

The following facts are taken from the District Court's order or are otherwise supported by the record. The plaintiffs, individuals who live or have lived in the Merrimack area, brought tort claims, including negligence, nuisance, trespass, and negligent failure to warn, alleging that the defendants' manufacturing process at its facility in the Town of Merrimack used chemicals that included perfluorooctanoic acid (PFOA). They further allege that PFOA is a toxic chemical that was released into the air from the Merrimack facility and has contaminated the air, ground, and water in Merrimack and nearby towns. As a result, the plaintiffs allege, the wells and other drinking water sources in those places were contaminated, exposing them to PFOA. According to the plaintiffs, people who have been exposed to PFOA are at an increased risk of developing health problems, including testicular cancer, kidney cancer, immunotoxicity, thyroid disease, high cholesterol, ulcerative colitis, and pregnancy induced hypertension. Thus, the plaintiffs allege, they "have suffered a significant increased risk of illness, disease or disease process as a result of that exposure, requiring an award of the cost of a program for medical monitoring for detection of such illness, disease process or disease."

In support of an affirmative answer to the first certified question, the plaintiffs argue that the need to incur the cost of medical monitoring for the early detection of illness or disease is a compensable injury under New Hampshire law, even absent present physical injury. According to the plaintiffs, it is "the exposure, the increased risk of illness or disease and the inherent latency of visible harm caused by [the defendants'] toxins that creates the present medical need for the testing, not an already diagnosed physical injury." They assert that, because "[t]he foundation of New Hampshire tort law . . . is one's right to recover for another's invasion of a legally protected interest," the "[t]ortiously caused present medical necessity to incur the cost of diagnostic testing for the early detection of illness or disease constitutes legal detriment and injury that does not require proof of present physical injury."

The defendants counter that in order to recover "under the traditional negligence claims" advanced by the plaintiffs, New Hampshire law requires present physical injury. The defendants assert that it is "black-letter law that there can be no liability for negligence unless there exists a duty, whose breach by the defendant causes the injury for which the plaintiff seeks to recover," and

3

that this court "has never affirmed liability under a negligence claim except upon proof of a physical injury." (Quotation and ellipsis omitted.) They argue that, because the plaintiffs "concede they do not allege any present physical injury from their purported exposure to PFOA," the plaintiffs "lack the essential predicate" imposed by this state's law.

In support of their position, the plaintiffs cite decisions from other jurisdictions recognizing claims for the costs of medical monitoring under circumstances similar to those presented in this case. However, our well-established precedents control the resolution of this issue. We have long held that "[t]he possibility that injury may result from an act or omission is sufficient to give the quality of negligence to the act or omission; but possibility [of injury] is insufficient to impose any liability or give rise to a cause of action." White v. Schnoebelen, 91 N.H. 273, 274 (1941) (emphases added). "If . . . there has been negligence, there is no cause of action unless and until there has been an injury." Id. As we explained,

> If twenty persons were endangered by an act having the possibility of injury, it would be absurd to say that rights of action accrued to all of them at the moment the defendant's act was completed, such rights of action to evaporate when it turned out that the harm was averted for some reason or other. Only if and when harm came to any one of the twenty, would a right of action accrue . . . . There is an actionable breach of the duty only when the injury happens.

Id.; see Dumas v. Company, 92 N.H. 140, 141 (1942) ("A right of action for negligence accrues only when the plaintiff has suffered an injury. The possibility of injury is not injury itself."), overruled on other grounds by Dumas v. State Mut. Auto. Ins. Co., 111 N.H. 43 (1971). Acknowledging that they do not plead present physical harm to their persons, the plaintiffs take the position that the "present medical necessity to incur the cost of diagnostic testing for the early detection of illness or disease constitutes legal detriment and injury." As we construe the plaintiffs' argument, the "present medical necessity" for "diagnostic testing" is based on the plaintiffs' allegation that they are at an "increased risk" that in the future they might possibly develop an illness or disease caused by exposure to PFOA. However, an increased risk of harm is not an injury for purposes of a negligence action. See Dumas, 92 N.H. at 141. As the District Court observed in the case before us, the plaintiffs' characterization of their "injury" as "the present need for and cost of diagnostic testing" conflates "an allegation of 'injury,'" which is "an instance of actionable harm," with "a claim for 'damages,'" that is, "a sum of money awarded to one who has suffered an injury." (Quotation and brackets omitted.) "In so doing," the court stated, "the plaintiffs effectively conceded that they do not, at present have an injury."

4

Nonetheless, the plaintiffs argue that "important public interests," including promoting "early diagnosis and treatment of disease or illness resulting from exposure to toxic substances," support the conclusion that the need to incur the cost of medical monitoring is itself a compensable injury. (Bolding and capitalization omitted.) The defendants note, however, that legislative efforts to supersede the common-law physical injury rule have been unsuccessful and that "abrogat[ing] the well-settled requirement of a present physical injury has severe and adverse public policy consequences."

"[T]he declaration of public policy with reference to a given subject is regarded as a matter primarily for legislative action." Welch v. Hospital, 90 N.H. 337, 340 (1939). Directly pertinent here, in 2020 the New Hampshire legislature passed a bill that would have established a statutory cause of action for medical monitoring for toxic substances without proof of present physical injury or symptoms. See HB 1375 (2020), https://www.gencourt.state.nh.us/bill_status/legacy/bs2016/billText.aspx?sy =2020&id=1818&txtFormat=html (last visited March 9, 2023). However, the Governor vetoed the bill and the legislature failed to override the veto. See https:/www.governor.nh.gov/sites/g/files/ehbemt336/files/documents/hb137 5-veto-message.pdf (last visited March 9, 2023) ("By not requiring proof of injury or symptoms . . . this bill could open the floodgates to new, less severe claims which would divert resources from those who truly need them."), https://www.gencourt.state.nh.us/bill_status/legacy/bs2016/Bill_docket.aspx ?lsr=2698&sy=2020&sortoption=&txtsessionyear=2020&txtbillnumber=hb1375 (last visited March 9, 2023) (displaying HB 1375 bill status as veto sustained). This recent legislative action reflects the current public policy of this state.

Under these circumstances, the mere existence of an increased risk of future development of disease is not sufficient under New Hampshire law to constitute a legal injury for purposes of stating a claim for the costs of medical monitoring as a remedy or as a cause of action in the context of plaintiffs who were exposed to a toxic substance but have no present physical injury. Accordingly, we answer the first certified question in the negative and, consequently, need not address the second question.

<u>Remanded</u>.

HICKS and DONOVAN, JJ., concurred.

5